## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

BLANCA ALICEA,

   **Plaintiff,**

      v.

ROBERT WILKIE, Secretary
Department of Veterans Affairs

   **Defendant.**

**CIVIL NO.** 17-2298 (RAM)

---

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, U.S. District Judge

Pending before the Court is Defendant David J. Shulkin's, Secretary of the Department of Veterans Affairs, *Motion for Summary Judgment*, accompanied by a *Statement of Uncontested Facts* and *Memorandum of Law in Support of Summary Judgment*. (Docket Nos. 50, 51 and 54). For the reasons discussed below, having considered the parties' submissions both in opposition and support of the same, the Court hereby **GRANTS** Defendant's *Motion for Summary Judgment*. (Docket No. 50).

## I.   PROCEDURAL BACKGROUND

On November 17, 2017, Plaintiff Blanca Alicea ("Alicea" or "Plaintiff") sued David J. Shulkin, M.D., the Secretary of the United States Department of Veterans Affairs, and the United States Department of Justice requesting that the Court prohibit the Veteran Affairs Caribbean Health Center (the "VA") from

terminating her employment at said hospital. (Docket No. 1). This filing was defective for failure to comply with Local Rule 3. *See* L. CV. R. 3.

Plaintiff filed her *Verified Amended Complaint* on November 20, 2017. (Docket No. 3). As in her original Complaint, Plaintiff alleged that Defendant violated Equal Employment Opportunity ("EEO") waiver requirements under 29 U.S.C. § 626(f). Furthermore, Alicea argues that Defendant unlawfully interfered with her federal statutory employment rights as prohibited by 29 U.S.C. § 626(f)(4) and/or 42 U.S.C. § 1983. (Id. ¶¶ 17-20) by attempting to "unlawfully coerce plaintiff into withdrawing an EEO discrimination complaint under threat of termination." (Id. ¶ 14). Lastly, Alicea contends that Defendant may be subject to prosecution for interference with a pending administrative investigation as well as tampering with and retaliating against witnesses in connection with an administrative proceeding. (Id. ¶ 22). Defendant filed his *Answer to Amended Complaint* on February 22, 2018, denying all allegations. (Docket No. 13).

Plaintiff filed her *Second Amended Complaint* on June 30, 2018. (Docket No. 21). In addition to reiterating her aforementioned claims regarding unlawful interference with statutory rights, witness tampering and violation of waiver requirements, Plaintiff added two additional causes of action: (1) violations of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et. seq.*; and

(2) unlawful workplace retaliation. (Id. ¶ 27-34). Defendant subsequently filed his *Answer to Second Amended Complaint*, once again denying all of Plaintiff's claims. (Docket No. 23).

On September 25, 2019, Defendant filed a *Motion for Summary Judgment* and *Statement of Uncontested Facts* ("SUF"). (Docket Nos. 50 and 51). Defendant filed a *Memorandum of Law in Support of Motion for Summary Judgment* on September 30, 2019. (Docket No. 54). In response, on October 29, 2019, Plaintiff filed an *Opposition to Defendant's Motion for Summary Judgment*, accompanied by an *Opposing Statement of Material Facts* ("Opposition"). (Docket Nos. 57 and 57-1). Additionally, Plaintiff filed a *Supplement to her Opposition* that included a statement of additional facts in dispute. (Docket No. 62).

On November 22, 2019, Defendant filed a *Reply* asserting that Plaintiff's *Opposition* was not supported by record citations nor cross references her *Opposing Statement of Material Facts* in violation of Local Rule 56(c) and thus, should not be considered by the Court. (Docket No. 63 ¶¶ 2-3).

## II.  LEGAL STANDARD

A motion for summary judgment is governed by Fed. R. Civ. P. 56(a). Summary judgment is proper if the movant shows that (1) there is no genuine dispute as to any material fact and (2) they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence about the fact is such

that a reasonable jury could resolve the point in favor of the non-moving party." Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008). A fact is considered material if it "may potentially 'affect the outcome of the suit under governing law.'" Albite v. Polytechnic Univ. of Puerto Rico, Inc., 5 F. Supp. 3d 191, 195 (D.P.R. 2014) (quoting Sands v. Ridefilm Corp., 212 F.3d 657, 660-661 (1st Cir. 2000)).

The moving party has "the initial burden of demonstrat[ing] the absence of a genuine issue of material fact with definite and competent evidence." Mercado-Reyes v. City of Angels, Inc., 320 F. Supp. 344, at 347 (D.P.R. 2018) (quotation omitted). The burden then shifts to the nonmovant, to present "competent evidence to rebut the motion." Bautista Cayman Asset Co. v. Terra II MC & P, Inc., 2020 WL 118592, at 6* (quoting Méndez-Laboy v. Abbott Lab., 424 F.3d 35, 37 (1st Cir. 2005)). A nonmoving party must show "that a trialworthy issue persists." Paul v. Murphy, 2020 WL 401129, at *3 (1st Cir. 2020) (quotation omitted).

While a court will draw all reasonable inferences in favor of the non-movant, it will disregard conclusory allegations, unsupported speculation and improbable inferences. See Johnson v. Duxbury, Massachusetts, 931 F.3d 102, 105 (1st Cir. 2019). Moreover, the existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Scott v. Harris, 550 U.S. 372, 379 (2007)

(quotation omitted). Hence, a court should review the record in its entirety and refrain from making credibility determinations or weighing the evidence. *See* <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 135 (2000).

In this District, summary judgment is also governed by Local Rule 56. *See* L. CV. R. 56(c). Per this Rule, an opposing party must "admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." <u>Id.</u> Furthermore, unless the fact is admitted, the opposing party must support each denial or qualification with a record citation. <u>Id.</u>

Additionally, Local Rule 56(c) allows an opposing party to submit additional facts "in a separate section." L. CV. R. 56(c). Given that the plain language of Local Rule 56(c) specifically requires that any additional facts be stated in a separate section, parties are prohibited from incorporating numerous additional facts within their opposition. *See* <u>Natal Pérez v. Oriental Bank & Trust</u>, 291 F. Supp. 3d 215, 218-219 (D.P.R. 2018) (quoting <u>Carreras v. Sajo</u>, Garcia & Partners, 596 F.3d 25, 32 (1st Cir. 2010) and <u>Malave-Torres v. Cusido</u>, 919 F.Supp. 2d 198, 207 (D.P.R. 2013)).

If a party opposing summary judgment fails to comply with the rigors that Local Rule 56(c) imposes, "a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated." <u>Caban Hernandez v. Philip Morris USA,</u>

<u>Inc.</u>, 486 F.3d 1, 7 (1st Cir. 2007). Thus, litigants ignore this rule at their peril. *See* <u>Natal Pérez</u>, 291 F. Supp. 3d at 219 (citations omitted).

### III. FINDINGS OF FACT

To make findings of fact, the Court analyzed Defendant's *Statement of Uncontested Facts in support of Motion for Summary Judgment* ("*SUF*") (Docket No. 51) and Plaintiff's *Opposing Statement of Material Facts* (Docket No. 57-1), as well as her statement of additional facts in dispute provided in the *Supplement to her Opposition*. (Docket No. 62). It is worth noting that Plaintiff uses identical language and record citations in every one of her fourteen (14) denials to the VA's *SUF*. (Docket No. 57-1 ¶¶ 9-15; 17-22; 28). In other words, Plaintiff relies exclusively on the same nine (9) pages of her deposition testimony as well as her statements to the EEO to attempt to controvert facts.[1]

After **only crediting material facts** that are **properly supported by a record citation and uncontroverted**, the Court makes the following findings of fact:

1. Plaintiff was born on January 13, 1962. (Docket No. 51 ¶ 1).

2. Plaintiff was fifty-five (55) years old when she was terminated in 2017. (<u>Id.</u>).

---

[1] References to a specific Finding of Fact shall be cited in the following manner: (Fact ¶ _).

3. On August 2, 2010, Alicea was assigned to the position of "Health Science Specialist" in the Office of the Chief of Staff, Infection Control Program at the Veterans Administration Caribbean Healthcare System (the "VACHCS" or "VA"). (Id. ¶ 2).

4. Alicea maintained this position throughout her employment at the VACHCS. (Id.).

5. Plaintiff received within-grade pay increases in 2012, 2014 and 2016. (Id. ¶ 6).

6. Mirsonia M. Martínez-Morales (Martínez) held the position "Infection Control Coordinator GS-13" and was Plaintiff's immediate supervisor from 2010 through 2017. (Id. ¶ 3).

7. Martinez was born in April 1965 and was fifty-two (52) years old at the time of Plaintiff's termination. (Id. ¶ 4).

8. Plaintiff had five (5) coworkers, namely: Rafael Cabán, fifty-nine (59) years old; Veronika Kerkado, sixty (60) years old; Nancy Roman, forty-three (43) years old; Damaris Román, thirty-eight (38) years old; and Zydnia Pomales, sixty-six (66) years old. (Id. ¶ 5).

9. These coworkers also received within-grade increases during their employment. (Id. ¶ 7).

10. Plaintiff received performance appraisals during her employment at the VA. (Id.).

11. Plaintiff's overall performance rating for the year 2010 was "outstanding." (Exhibit No. 62-14 at 1).

12. Plaintiff's overall performance rating for the year 2011 was "outstanding." (Exhibit No. 62-14 at 3).

13. Plaintiff's overall performance rating for the year 2012 was "fully successful." (Exhibit No. 62-14 at 5).

14. Plaintiff's overall performance rating for the year 2013 was "fully successful." (Exhibit No. 62-14 at 7).

15. Plaintiff's overall performance rating for the year 2014 was "fully successful." (Exhibit No. 62-14 at 9).

16. Plaintiff's overall performance rating for the year 2015 was "fully successful." (Exhibit No. 62-14 at 11).

17. Plaintiff's overall performance rating for the year 2016 was "fully successful." (Exhibit No. 62-14 at 13).

18. Said appraisals contained the following five performance elements and standards: customer service, surveillance, prevention and control, age related, and education. (Docket No. 51 ¶ 7).

19. Specifically, the "Surveillance" performance element and standard required the following:

> Conducts surveillance according to laboratory data and epidemiologic principles aimed at detecting and recording hospital associated infections. No more than three deviations with no adverse impact will be accepted during the rating period.

> Assists in her assigned area problem resolution of IC issues as directed by the Infection Control Committee. No more than three deviations with no adverse impact will be accepted during the rating period.
>
> Serves as resource for the Department of Health investigations and follows-up during outbreaks or acts of bioterrorism. No more than three deviations with no adverse impact will be accepted during the rating period.

(Id. ¶ 8).

20. On March 31, 2017, Martínez, Plaintiff's supervisor, sent Alicea a Memorandum with the subject "PIP Meeting Request." In this Memorandum, Martínez informed Plaintiff that she was "not meeting the standard of Surveillance" pursuant to her performance appraisal. Therefore, Martínez was scheduling a meeting for April 5, 2017, to develop a Performance Improvement Plan ("PIP") to provide Alicea "with all the necessary tools to achieve successful performance in this critical element." The Memorandum also notified Plaintiff that she had the right to union representation during the meeting. (Id. ¶ 10).

21. On April 5, 2017, Plaintiff received a Memorandum titled "Notification of Unacceptable Performance/Opportunity to Improve," detailing both the deficiencies of Plaintiff's performance and the nature of the ninety (90) day PIP to be implemented. (Docket Nos. 51 ¶¶ 12-13; 51-9).

22. Specifically, the Memorandum describes the following five (5) instances in which Alicea deviated from the standard for surveillance:

    1. On 11/7/16, I explained to you regarding a case that you took as PNU1 and it should be classified as PNU2, as patient had positive aspirated sputum culture results. Per CDC guidelines. PNU1 category is without culture specimen results. Also, signs and symptoms described by you in the surveillance log for this case were not inside the infection window period as required by CDC guidelines.

    2. On 11/7/16, you took a case as hospital acquired skin infection with a susceptible organism (Penile prosthesis infection). I explained to you that patient had a surgery, and as per CDC guidelines should be taken as surgical site infection (SSI) and not skin infection. Also, surveillance of skin infections was not supposed to be taken, unless it was an infection with a Multi drug resistant organism, which was not the case. This case shouldn't be taken as a Hospital acquired infection, it was a community acquired infection; Infectious diseases note (9/30/16) documents that patient had previous interventions and infections of penile prosthesis at non-VA hospital. H&P CPRS note 8/23/16, also documents previous prosthesis surgeries done at non-VA hospital.

    3. On 11/4/17 I sent you a message because your pending UTI list had cultures form October still without been analyzed. On 11/9/17, cultures were still pending, therefore, I re-sent you the message with pending cultures list again, to what you replied that cultures were already checked. You did not take patient with a catheter associated urinary tract infection per CDC guidelines. You classified this patient as not relevant community acquired UTI in TheraDoc.

    4. On 3/2/17 you did not take a patient as a catheter associated urinary tract infection

(CAUTI). CDC guidelines were not followed and record was not appropriately reviewed as there were many physician notes documenting that patient had a CAUTl. You documented in CPRS that no CAUTl was identified.

5. On 3/9/17, during the Pneumonia surveillance, you marked erroneously a patient with pneumonia instead of marking the correct patient. After you did the correction, correct patient was not marked with appropriate CDC guidelines signs and symptoms for pneumonia. Also, you marked erroneously another 2 patients with pneumonia in the table. These mistakes are related to recording hospital associated infections as specified in Surveillance standard.

(Docket Nos. 51 ¶ 13; 51-9 at 2-3).

23. Plaintiff's performance appraisal dated April 6, 2017 indicates that she "[n]eeds improvement to be Fully Successful or better." (Id. ¶ 14).

24. On April 14, 2017, Plaintiff initiated contact with an Equal Employment Opportunity ("EEO") counselor raising harassment and discrimination claims. (Docket Nos. 51 ¶ 25; 51-16 at 2).

25. On July 21, 2017, Martínez sent a memorandum to the Chief of Staff, informing them that "[a]fter the 90 days' [sic] period of the PIP, Mrs. Alicea did not achieve a satisfactory level of performance in the standard of: Surveillance." (Docket Nos. 51 ¶ 15; 51-11 at 2).

26. That same day, Plaintiff, through her Union, requested voluntary reassignment to a position within the Nursing Service. (Id. ¶ 16).

27. On July 23, 2017, the EEO Counselor issued a report that provided a brief description of Alicea's age discrimination and hostile work environment claims; the resolution sought; management's response; a summary of resolution efforts; and a final interview. (Docket Nos. 51 ¶ 26; 51-17).

28. Plaintiff filed her formal EEO complaint of discrimination using VA form 4939 on July 26, 2017. (Docket No. 51-16 at 2).

29. The EEO accepted the following claims presented by Alicea for investigation and further processing:

   1. From February 28, 2017 and ongoing, Mirsonia Martinez (MM), Infection Control Coordinator, excluded Complainant from serving temporary leadership duties.

   2. From February 28, 2017 and ongoing, the complainant has never been awarded a Quality Step Increase.

   3. On April 5, 2017, MM placed the Complainant on a Performance Improvement Plan (PIP).

   4. On April 6, 2017, MM issued Complainant a mid-term evaluation with the following progress review: "needs improvement to be Fully Successful or better.

   (Docket Nos. 51 ¶ 25; 51-16 at 3).

30. On August 17, 2017, the acting Chief of Staff, Dr. William Acevedo, issued a Notice of Proposed Removal – Unacceptable Performance to Plaintiff. Plaintiff and AFGE Local 2408 received the notice on August 21, 2017. (Docket No. 51 ¶ 17; 51-13).

31. The Notice provided the following reasons for why it was being proposed that Plaintiff be removed from federal service:

> For the period of April 5, 2017 through June 29, 2017, you failed to meet the performance standards of the critical element of your position entitled Surveillance.

> Specifically, during the above period your performance, as measured against the performance standards for the critical element of your position, has been as follows:

> Standard: Conducts surveillance according to laboratory data and epidemiologic principles aimed at detecting and recording hospital associated infections.

> Actual Performance: Unacceptable.

> 1. On 06/29/17, it was identified that you failed to conduct surveillance per CDC guidelines as you took a Lt Total Knee arthroplasty surgery as a Surgical Site Infection (SSI). You documented this case as a hospital associated infection (HAI) in Infection Control (IC) surgical site HAI log. This case was operated in 3/21/2011 and you documented that was operated in 3/21/2017. Also, wrong surgeon name was entered in log, and anesthetist name was entered instead of first assistant name (this was also identified in another case on 04/20/17).

2. On 6/29/17, it was identified that you altered IC data in Open Heart Surveillance June log. You changed the initials of the employee that did this surveillance in 2 patients (as this employee was assigned to do it), and placed yours, adjudicating her job to you.

3. On 6/29/17, it was identified that you erroneously classified a patient with 2 urine cultures with same results and collected same dates in Theradoc; one as Hospital acquired (HA) and the other as Community acquired (CA). Also on 5/3/17, was identified that you classified a sputum/culture as not relevant Hospital acquired, and should be not relevant Community acquired. Also, urine/culture from MICU classified as not relevant (CA), and should be not relevant.

4. On 06/16/17 (due date to complete surveillance was 06/14/17), you mentioned that 2 cases of Ventilator associated condition (VAC) were not entered in Theradoc for the statistics and that one of them was not even analyzed. She referred that one case was in the back of the page and she did not notice it. Surveillance timeliness was also failed on 5/17/17.

5. On 6/09/17, it was identified that you incompletely filled IC Knee and Hip arthroplasty surveillance log for April and one patient was not entered to do surveillance. On 6/29/17, it was identified that you failed to enter 3 patients in May log, and surveillance was not performed. Also, the 30 days' [sic] post-surgery surveillance was done in one case prior to the end of the 30 days' [sic] period. This was also identified on 4/20/17 and 4/26/17, were in 4 patients you did the surveillance and documented it in CPRS notes prior to the end of the 30 days post-surgery period.

6. On 6/9/17, it was identified that you erroneously recorded a Catheter Associated Urinary tract infection (CAUTI) in IC Hospital associated infection log and in your surveillance notebook. You documented as

criteria for CAUTI bradycardia (that is criteria for less than 1 year old patient) and fever of 100.2 F which is not criteria.

7. On 6/9/17, you documented on CPRS note that diagnosis upon admission was a Suprapubic abscess 2ary to MRSA, and patient did not come to hospital with the abscess, it was a hospital acquired MRSA abscess.

8. On 4/20/17, it was identified that you failed to conduct surveillance per CDC guidelines as you took a S/P Resection arthroplasty as a Surgical Site Infection (SSI) and this case shouldn't be taken as it was an already infected class IV surgery.

9. You did surveillance on Hepatitis B results, and reported Hepatitis B core results to P.R. Department of Health, and cases were not indicated to be reported. Only cases in acute phase, should be reported as per Department of Health law. Letter sent to Department of Health with corrections.

10. On 5/3/17, Clinical Case Registry pending Hepatitis C Virus list of cases was provided to her for surveillance, there were to many pending cases. This list should be reviewed on a weekly basis to confirm or delete cases accordingly. List had 3 cases that should be confirm [sic] since April. List was never received back for my review, Mrs. Alicea said that she did not has [sic] the list and don't [sic] know where she placed it.

(Docket Nos. 51 ¶ 17; 51-13 at 2-4).

32. Alicea's "Overall Rating," i.e. annual rating of record, pursuant to her Performance Appraisal dated October 30, 2017 was "UNACCEPTABLE – The achievement level(s) for one (or more) critical element(s) is(are) designated as Unacceptable." (Docket Nos. 51 ¶ 18; 51-2 at 6).

33. The Additional Comments/Information section of Plaintiff's

October 30, 2017 Performance Appraisal stated the following:

> After Mrs. Alicea was placed under Performance
> Improvement Plan (PIP), Mrs. Alicea failed to
> achieve fully successful level of performance level
> in this standard due to the following:
>
> on 06/29/17 it was identified that Mrs. Alicea
> failed to conduct surveillance per CDC guidelines
> as she documented a Left knee arthroplasty surgery
> as a surgical site infection (SSI). Mrs. Alicea
> documented this case as a hospital associated
> infection (HAI) in infection control (IC) surgical
> site HAI log. This case was operated on 03/21/2011,
> and Mrs. Alicea documented that was operated
> 03/21/2017. Also, wrong surgeon name was entered in
> log and anesthetist name was entered instead of
> first assistant surgeon name (this was also
> identified in another case on 04/20/17).
>
> On 06/29/17, it was identified that Mrs. Alicea
> erroneously classified a patient with two urine
> cultures with same results and collected same dates
> in TheraDoc software; one as hospital acquired (HA)
> and the other as community acquired (CA). Also on
> 05/03/17, was identified that Mrs. Alicea
> classified a sputum culture as not relevant HA, and
> should be not relevant CA. Also urine culture from
> MICU classified as not relevant CA, and should be
> not relevant.
>
> On 06/16/17 (due date to complete surveillance was
> 06/14/17) Mrs. Alicea mentioned that two (2) cases
> of ventilator associated condition (VAC) were not
> entered in TheraDoc for the statistics and that one
> of them was not even analyzed. Mrs. Alicea referred
> that one case was in the back of the page and she
> did not notice it. Surveillance timeliness was
> also,failed on 05/17/17.
>
> On 06/09/17,it was identified that Mrs. Alicea
> erroneously recorded a catheter associated urinary
> tract infection (CAUTI) in IC hospital associated
> infection log and in her surveillance notebook.
> Mrs. Alicea documented as criteria for CAUTI

> bradycardia (that is criteria for less than 1 year
> old patient) and fever of 100·. 2 F which is not a
> criteria.
>
> On 06/09/17, Mrs. Alicea documented on CPRS note
> that diagnosis upon admission was suprapubic
> abscess secondary to MRSA, and patient did not come
> to hospital with the abscess, it was a HA MRSA
> abscess.
>
> On 04/20/17, it was identified that Mrs. Alicea
> failed to conduct surveillance per CDC guidelines
> as she documented a 8/P resectiun arthroplasty as
> a surgical site infection (SSI), and this case
> should not be taken as it was an already infected
> Class IV surgery.

(Docket Nos. 51 ¶ 19; 51-2 at 6-7).

34. On November 2, 2017, the Acting Director, Dr. Antonio Sánchez, issued a "Decision Letter - Removal" notifying Plaintiff that a decision had been made to sustain the charge of unacceptable performance." (Docket No. 51 ¶ 20).

35. The Decision Letter also provided Alicea with the opportunity to accept a "Last Chance Agreement" ("LCA"). Pursuant to the LCA, Plaintiff would be transferred to a Staff Nurse position in exchange for, amongst other things, agreeing to the following language:

> I, Blanca Alicea, agree to voluntarily withdraw any
> and all pending informal and formal EEO complaints,
> any appeals to the Merit Systems Protection Board,
> any complaints before the Office of Special
> Counsel, any grievances, whether formal or
> informal, any court actions, and all other claims
> arising under any federal, state, or local law,
> regulation, or ordinance, against the Agency, its
> past and present administrators or employees, in
> their personal or official capacities, in any stage

of processing in their entirety, including, but not
limited to, EEO Case No. 200I-0672-2017103130.

(Docket Nos. 51 ¶¶ 21-22; 51-14 at 5).

36. Plaintiff was advised that if she declined the LCA, the decision to remove her from Federal Service would be enforced immediately. (Docket No. 51 ¶ 21).

37. On November 17, 2017, Alicea was personally handed an "Enforcement Decision – Removal" letter signed by the Acting Director of VA, Dr. Antonio Sánchez. (Id. ¶ 24).

38. The letter notified Plaintiff that because she did not accept the LCA, she was being removed from Federal Employment based on the charge of unacceptable performance effective November 21, 2017. (Docket Nos. 51 ¶ 24; 51-15 at 2).

39. On November 17, 2017, the EEO issued an Investigative report. (Docket No. 51 ¶ 27).

40. On February 12, 2018, the EEO issued a Final Agency Decision concluding that Alicea "failed to prove that she was discriminated against as claimed." (Docket No. 51 ¶ 28).

41. Furthermore, the Final Agency Decision informed Plaintiff that she has the right to file a civil action in an appropriate United States District Court "within 90 days of receipt of this final decision if no appeal to the EEOC has been filed." (Id. ¶ 29).

## IV.  ANALYSIS

### A.   The Age Discrimination in Employment Act

Alicea sued Defendant for alleged violations to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623. (Docket No. 21 ¶ 27-31). The ADEA makes it unlawful for an employer to discharge, take adverse employment action or otherwise discriminate against any individual **because** of their age. *See* 29 U.S.C.A. § 623(a). Thus, for a claim to arise under this statute, "the plaintiff's age **must have actually played a role in the employer's decision making process and had a determinative influence on the outcome.**" Arce v. Aramark Corporation, 239 F.Supp. 2d 153, 159 (D.P.R. 2003) (emphasis added) (citing Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000)).

The Supreme Court has held that for a plaintiff to prevail in a lawsuit under the ADEA, they "must prove that age was the **'but-for' cause** of the employer's adverse decision." Gross v. FBL Financial Services, Inc., 557 U.S. 167, 176 (2009) (emphasis added). Hence, they must prove through preponderance of the evidence that age "must have been **the determinative factor as opposed to merely a motivating factor in the employer's decision.**" Rivera-Cruz v. Hewitt Assocs. Caribe, Inc., 2018 WL 1704473, at *6 (D.P.R. 2018) (citation omitted). Thus, "mixed-motive" cases where "an employee alleges that [they] suffered an adverse employment action because of both permissible and impermissible

considerations" are insufficient for a successful ADEA claim. Gross, 557 U.S. at 171.

In the absence of direct evidence of discrimination, as is often the case, Courts asses circumstantial evidence through the three-step, burden-shifting framework established in the seminal case McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). *See* Flaherty v. Entergy Nuclear Operations, Inc., 946 F.3d 41, 53 (1st Cir. 2019). First, the plaintiff must establish a *prima facie* case of age discrimination showing, by preponderance of the evidence, that they: (1) were at least forty (40) years old at the time of the alleged adverse employment action; (2) were qualified for the position they held; (3) suffered an adverse employment action; and (4) the employer later filled the position, thereby demonstrating the continuing need for those services. *See* Rodriguez-Cruz v. Stewart Title Puerto Rico, Inc., 209 F. Supp. 3d 427, 438-39 (D.P.R. 2016); Arroyo-Audifred v. Verizon Wireless, Inc., 527 F.3d 215, 219 (1st Cir. 2008) (citing Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)).

Once the plaintiff establishes a *prima facie* case of discrimination, a presumption of discrimination arises. The burden then shifts to the employer to rebut said presumption and "come forward with a legitimate, nondiscriminatory reason for its action." Gomez-Gonzalez v. Rural Opportunities, Inc., 626 F.3d 654, 662 (1st Cir. 2010). To do so, "[t]he defendant must clearly

set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." <u>Feliciano de la Cruz v. El Conquistador Resort and Country Club</u>, 218 F. 3d 1, 5-6 (1st Cir. 2000) (quoting <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 507 (1993)). If the defendant produces a legitimate basis for the adverse action, then the presumption of discrimination disappears and the final shift of the burden of production occurs.

In this final step, a plaintiff bears the burden of showing that the rationale provided by the employer was solely "a pretext for impermissible age discrimination." <u>Martinez v. Nordisk</u>, 397 F. Supp. 3d 207, 219 (D.P.R. 2019) (quotation omitted). To do so, the plaintiff must "elucidate **specific facts** which would enable a jury to find that the reason given is not only a sham, **but a sham intended to cover up the employer's real motive: age discrimination**." <u>Id.</u> (quoting <u>Meléndez v. Autogermana</u>, Inc., 622 F.3d 46, 52 (1st Cir. 2010)). These specific facts can include inconsistencies, contradictions, weaknesses or incoherencies in the employer's reason sufficient to show that the employer failed to act in a non-discriminatory way. *See* <u>Reyes Caballero v. Oriental Bank</u>, 2019 WL 6330812, at *11 (D.P.R. 2019) (quotation omitted). It is worth noting that said "pretext analysis is more demanding than the *prima facie* standard." <u>Id.</u>

Moreover, the mere fact that the <u>McDonnell Douglas</u> presumption may shift the burden of **production** to the defendant, does not mean that a plaintiff loses their burden of **proof**. Rather, the **plaintiff maintains this burden throughout the life of the case**. *See* <u>Serrano-Cruz v. DFI Puerto Rico, Inc.</u>, 109 F.3d 23, 25-26 (1st Cir. 1997) (holding that although the burden of production shifts, the burden of persuasion remains with the plaintiff at all times).

In this case, Defendant concedes that three of the four elements of a *prima facie* ADEA case are met. Namely: (1) Plaintiff is over the age of forty (40); (2) Plaintiff was terminated and thus suffered an adverse employment action; and (3) there exists a need for her services. (Docket No. 54 at 8). However, Defendant posits that Alicea was not qualified in light of the various instances in which Plaintiff failed to meet the standards of her position. <u>Id.</u> at 7-8. The First Circuit has found that courts should not rely on deficient performance evaluations when assessing if a *prima facie* case is met when said performance evaluations are simultaneously invoked as the employer's non-discriminatory reason for termination. *See* <u>Melendez v. Autogermana, Inc.</u>, 622 F.3d 46, 51 (1st Cir. 2010). Doing so would "bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination." <u>Id.</u> (quoting

Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 574 (6th Cir. 2003)).

Moreover, a relatively low threshold is required to establish a *prima facie* case under the ADEA. *See* Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 720 (1st Cir. 1994); Melendez, 622 F.3d at 51 ("[A]n employee's burden at the *prima facie* stage is not particularly onerous."). It is uncontested that Alicea occupied the Health Science Specialist position since August 2, 2010. (Fact ¶ 3). Moreover, Plaintiff has shown that she received successful performance evaluations until 2017. (Facts ¶¶ 11-17). Therefore, Alicea sufficiently evinced that she was initially qualified for her position. Given that Defendant does not contest that the remaining three prongs are met, Plaintiff successfully established a *prima facie* ADEA case.

The burden of production now shifts to the employer. The Court finds that Defendant's proffered reasoning regarding Alicea's well-documented performance problems supports the existence of a legitimate, nondiscriminatory reason for placing Plaintiff on a PIP and ultimately terminating her employment. Pursuant to the performance criteria by which Plaintiff was evaluated, "[n]o more than three deviations with no adverse impact will be accepted during the rating period." (Fact ¶ 19). Collectively, the "Notification of Unacceptable Performance/Opportunity to Improve" and "Notice of Proposed Removal – Unacceptable Performance" detail

a total of fifteen (15) discrete instances in which Plaintiff deviated from the acceptable surveillance performance standards. (Facts ¶¶ 21-22; 30-31). Said evidence suffices "to enable a rational factfinder to conclude that there existed a nondiscriminatory reason" for both placing Alicea on a PIP and subsequently terminating her employment. *See* <u>Ruiz v. Posadas de San Juan Assocs.</u>, 124 F.3d 243, 248 (1st Cir. 1997).

Thus, the inference of discrimination that arose from the *prima facie* case vanishes and the burden returns to Alicea to show by **preponderance of evidence** that Defendant's stated nondiscriminatory reasons are **merely pretext or a sham**. *See* <u>Albite</u>, 5 F. Supp. 3d at 197 (citations omitted). The only evidence presented by Plaintiff to establish pretext are (1) her performance evaluations from 2010-2016; (2) her testimony attesting that she has no history of recurring mistakes; and (3) her testimony stating that another employee, Gladys Cordero, had also been discriminated against for her age by her supervisor. (Docket Nos. 57 and 62 at 5-6).

Plaintiff **does not specifically deny nor dispute the performance problems** enumerated by both her supervisor and the Acting Director of the VA. <u>Id.</u> Instead, Plaintiff provides a blanket denial and simply maintains that, prior to 2017, her performance had always been successful. When evaluating whether an employer's stated reason for firing a plaintiff was pretextual,

the question is not whether the plaintiff was actually performing below expectations, but whether the employer believed that they were. *See* Feliciano de la Cruz, 218 F.3d at 7. Alicea is essentially asking the Court to disregard the evidence provided by Defendant regarding her inadequate performance evaluations at the time of her dismissal and instead, rely on her own assessment of her performance. Prior satisfactory, or even outstanding, performance does not negate future deficiencies, nor does it mar the legitimacy of subsequent negative evaluations. Moreover, Alicea's personal appraisal of her work, without any additional evidence, is insufficient for a reasonable fact-finder to conclude that her supervisor and the Acting Director did not actually believe that Alicea was performing below expectations at the time of her dismissal. *See* Melendez, 622 F.3d at 53.

Alicea's deposition testimony regarding alleged discrimination against Gladys Cordero is also insufficient to establish pretext. Although Plaintiff alleges throughout her deposition that her supervisor, Mirsonia Martinez, discriminated against Gladys Cordero because of her age, Alicea also repeatedly asserts that Martinez discriminated against another employee, Leda Melendez, who was under the age of forty (40).[2] Taking the totality

---

[2] The pertinent part of the Deposition transcript reads as follows:

Q. Okay. Anything else Ms. Alicea?

of the testimony as true, Plaintiff has not shown by preponderance of the evidence that a hostile work environment because of **age** discrimination existed nor that age was the motivating factor for her negative performance evaluation and PIP.

Given that no direct evidence of age-based discrimination has been furnished and taking into consideration that Plaintiff has failed in providing that the articulated reason for her dismissal is merely pretextual in nature, Defendant's *Motion for Summary Judgment* is granted as to Plaintiff's ADEA discrimination claim. (Count I of the *Second Amended Complaint* at Docket No. 21).

## B. Retaliation

The ADEA also prohibits retaliation, providing that:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment … because such individual … has opposed any practice made unlawful by this section, or because such individual … has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C.A. § 623(d). As in discrimination cases, in the absence of direct evidence, courts "follow the McDonnell Douglas framework

---

A. Yes. Ms. Mirsonia Martinez had a discrimination pattern, not only with my coworker Gladys Cordero but she also had one with Ms. Leda Melendez, she gave her a poor evaluation. Ms. Mirsonia Martinez had a pattern of abuse and discrimination. And she discriminated against Ms. Gladys Cordero because of her age, because she was more than 62, over 40 years old. With Ms. Leda Melendez, she was less than 40 years old, like people say, that after her work she had been given a lesser evaluation than the work that she had performed, that is why she left.

Docket No. 62-1 P. 23-24, L. 15-1.

in analyzing whether a retaliation claim survives summary
judgment, 'albeit with slight modifications to account for
the retaliation claim's distinct focus.'" Robinson v. Town of
Marshfield, 950 F.3d 21, 30 (1st Cir. 2020) (quoting Soto-Feliciano
v. Villa Cofresi Hotels, Inc., 779 F.3d 19, 30 (1st Cir. 2015)).

Pursuant to said modified framework, plaintiff must make a
*prima facie* showing that (1) they engaged in ADEA-protected
conduct; (2) they were subsequently subjected to an adverse
employment action; and (3) a causal connection existed between the
protected conduct and the adverse action. *See* Mesnick v. Gen. Elec.
Co., 950 F.2d 816, 827 (1st Cir. 1991). It is worth noting that
being unable to establish a *prima facie* case of ADEA **discrimination**
does not foreclose plaintiff's ability to establish a *prima facie*
case of **retaliation**. Id. "It is enough that the plaintiff had a
reasonable, good-faith belief that a violation occurred; that
[they] acted on it; that the employer knew of the plaintiff's
conduct; and that the employer lashed out in consequence of it."
Id.

Once the plaintiff makes a *prima facie* showing of retaliation,
as in discrimination cases, the burden of production then shifts
to the employer to "offer a legitimate, non-retaliatory reason for
the adverse employment action." Soto-Feliciano v. Villa Cofresi
Hotels, Inc., 779 F.3d 19, 30 (1st Cir. 2015) (citing Muñoz v.

Sociedad Española de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 671 F.3d 49, 55 (1st Cir. 2012)).

If evidence of such a reason is provided, "the plaintiff must assume the further burden of showing that the proffered reason is a pretext calculated to mask retaliation." Harrington v. Aggregate Indus. Ne. Region, Inc., 668 F.3d 25, 31 (1st Cir. 2012) (citation omitted). A plaintiff does not need to prove retaliation by preponderance of the evidence to defeat summary judgment. Instead, they bear "the lighter burden of showing that a genuine issue of material fact exists about whether retaliation was the **true motive** for the adverse employment action in question." Soto-Feliciano, 779 F.3d at 31. (emphasis added). Courts confronted by summary judgment motions must consider the evidence as a whole to determine "whether the aggregate evidence of pretext and retaliatory animus suffices to make out a jury question." Mesnick, 950 F.2d at 827.

Alicea predicates her retaliation claim **exclusively on** the **temporal proximity** between her initial contact with the EEOC and her negative performance evaluation and Performance Improvement Plan (PIP). (Docket Nos. 57 and 62 at 2-4). Moreover, Plaintiff claims that the retaliatory PIP created a hostile work environment. The First Circuit has held in other ADEA retaliation cases that "[a] very close temporal proximity between an employer's knowledge of a protected activity and an adverse action can suffice to support an inference of a causal connection in some circumstances."

Robinson, 950 F.3d at 30 (citing Calero-Cerezo v. U.S. Dep't of
Justice, 355 F.3d 6, 25 (1st Cir. 2004); Mesnick, 950 F.2d at 828).

     The relevant adverse employment actions, specifically placing
Alicea on a PIP and giving her an unsuccessful performance
evaluation, occurred on **April 5, 2017** and **April 6, 2017**,
respectively. (Facts ¶¶ 21-23).[3] There are some discrepancies with
regards to the date in which Plaintiff engaged in ADEA protected
conduct. In her *Opposing Statement of Material Facts*, **Plaintiff
admitted the fact that she made initial contact** with an EEO
counselor on **April 14, 2017**. (Docket No. 57-1 ¶ 25). This date is
supported by a letter from the Department of Veterans Affairs,
Office of Resolution Management specifying that Plaintiff
initiated contact with an EEO counselor on April 14, 2017 (Docket
No. 51-16). However, in the *Supplement to her Opposition* Alicea
claims that she **initiated contact** with the EEO on **April 3, 2017**,
citing her deposition testimony and notes with said date. (Docket
Nos. 62 ¶¶ 25-26; 62-2).

     In either case, with the record before the Court, a reasonable
juror could not find that there was a causal connection between
Alicea's initial contact with the EEOC and any adverse actions
that followed **based on timing alone.** The record shows that on **March**

---

[3] The Court notes that Plaintiff used the same blanket denial with regards to
these facts although she subsequently affirmed that they occurred on the
provided dates in the *Supplement to her Opposition*. (Docket Nos. 57-1 ¶¶ 12-
14; 62 at 2-6).

**31, 2017,** i.e. **before both dates,** Martínez sent Alicea a Memorandum titled "PIP Meeting Request" informing Plaintiff that she was not meeting the applicable performance standards and thus, they were going to have a meeting on April 5, 2017 to develop a PIP. (Facts ¶ 20). Although Plaintiff clearly takes issue with the claims regarding her performance, she **did not deny that the memorandum existed, that she received it on March 31st, nor that the copy submitted by Defendant as an exhibit was accurate.** (Docket No. 57-1 ¶ 10-11). Pursuant to the evidence before the Court, Plaintiff was: (1) informed of her performance deficiencies and imminent PIP in the March 31, 2017 memorandum; (2) placed on a PIP on April 5, 2017 pursuant to said memorandum; and (3) given a performance appraisal on April 6, 2017. (Facts ¶¶ 20-23). Thus, even if Alicea initiated contact with the EEO on April 3, 2017, Plaintiff **cannot sustain that a causal connection existed** between her protected conduct and the adverse action **because she had been notified of her negative performance evaluation and PIP <u>before</u> she engaged in ADEA protected conduct.** Moreover, Plaintiff has not alleged nor evidenced that the VA was cognizant of any ADEA protected activity prior to April 14, 2017, let alone before the March 31, 2017 memorandum. The failure to show causation is fatal to Alicea's retaliation claim. *See* <u>Sabinson v. Trustees of Dartmouth Coll.</u>, 542 F.3d 1, 5 (1st Cir. 2008). In <u>Sabinson</u>, Dartmouth College formally decided to "marginalize" Professor Sabinson to certain

courses after receiving various complaints of her performance on June 3, 2005. Id. at 2-5. Professor Sabinson filed an EEO complaint on August 8, 2005 and ultimately received her "unattractive" course assignments on August 16, 2005. Id. at 5. The First Circuit held that while contacting the EEOC or filing a complaint "cannot be the basis for adverse employment action but it also cannot immunize an employee from action already planned and not dependant [sic] on the complaint." Id.

It is uncontroverted that the VA was aware of Plaintiff's age discrimination claim pending before both the EEOC and this Court at the time of her dismissal. However, said knowledge is insufficient to take a retaliation case to the jury. See Mesnick, 950 F.2d at 828. "Were the rule otherwise, then a disgruntled employee, no matter how poor [their] performance […], could effectively inhibit a well-deserved discharge by merely filing, or threatening to file, a discrimination complaint." Id. See also Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001) (per curiam) ("Employers need not suspend previously planned [actions] upon discovering that a [discrimination] suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality").

Lastly, in the Supplement to her Opposition, Plaintiff claims that her supervisor "expressed concern" that Alicea was reporting

diseases at the VA and thus had "had an ulterior motive or reason to find a way to quickly remove" her from employment. (Docket No. 62 ¶ 5). This reasoning **undermines** Plaintiff's claims that she was retaliated against and given a PIP **for contacting the EEOC**. *See* Sabinson, 542 F.3d at 5 (concluding that "the existence of personal or professional hostility toward [an employee] based on other reasons tends to work against her claim of discrimination.").

Given that Alicea has failed to establish the existence of a causal connection between the previously planned PIP and her EEO complaint, Defendant's *Motion for Summary Judgment* is granted as to Plaintiff's retaliation claim (Count II of the *Second Amended Complaint* at Docket No. 21).

### C.   Unlawful-interference with Statutory Rights and Violation of EEO Waiver Requirements

Pursuant to the LCA offered on November 2, 2017, Alicea would have been transferred to a Staff Nurse position in exchange for voluntarily withdrawing her pending EEO complaints. (Fact ¶ 35). Plaintiff claims that because her EEO complaints alleged ADEA violations, the LCA needed to comply with the ADEA waiver requirements listed at 29 U.S.C.A. § 626(f) to be valid. (Docket No. 62 ¶¶ 13-19). However, because the LCA did not comply with said statutory requirements, Plaintiff argues that it was an unlawful interference of her right to participate in an EEO investigation. Id.

In her *Second Amended Complaint*, Plaintiff raises her "unlawful-interference with statutory rights" claim pursuant to 29 U.S.C. §626(f)(4) and/or 42 U.S.C. § 1983. (Docket No. 21 at 11). Said section of the ADEA dictates that "[n]o waiver agreement may affect the Commission's rights and responsibilities to enforce this chapter. No waiver may be used to justify interfering with the protected right of an employee to file a charge or participate in an investigation or proceeding conducted by the Commission." 29 U.S.C.A. § 626(f)(4). The Third Circuit has determined that the purpose of § 626(f)(4) is to notify parties that "whatever its provisions, a privately executed waiver agreement cannot alter or obstruct the EEOC's ability to exercise its rights and responsibilities, and that an employer may not invoke a waiver in an attempt to impede an employee's participation in EEOC procedures." Wastak v. Lehigh Valley Health Network, 342 F.3d 281, 289-90 (3d Cir. 2003). In other words, this section merely states the limits of ADEA waivers, regardless of their validity. It does not give rise to an independent cause of action as Plaintiff alleges.

Defendant correctly asserts that 42 U.S.C. § 1983 is equally inapplicable. (Docket No. 54 at 19-20). "Because section 1983 provides a remedy for violations of federal law by persons acting pursuant to state law, federal agencies and officers are facially exempt from section 1983 liability inasmuch as in the normal course

of events they act pursuant to federal law." Hindes v. F.D.I.C.,
137 F.3d 148, 158 (3d Cir. 1998) (citing District of Columbia v.
Carter, 409 U.S. 418, 425, (1973)).

Plaintiff also avers a separate cause of action for
"violation of EEO waiver requirements" in general, pursuant to 29
U.S.C. § 626(f). (Docket No. 21 at 11). The Tenth Circuit has held
that the waiver provisions of the ADEA are not "**swords that provide
plaintiffs with an independent cause of action for affirmative
relief, other than declaratory or injunctive relief to negate the
validity of the waiver**." Whitehead v. Oklahoma Gas & Elec. Co.,
187 F.3d 1184, 1191 (10th Cir. 1999) (emphasis added). Likewise,
when faced with analogous claims, District Courts have routinely
held that the waiver provisions of the ADEA do not create an
additional, independent cause of action under these statutes. *See*
EEOC v. Sara Lee Corp., 923 F.Supp. 994, 999 (W.D. Mich. 1995) ("a
failure to meet the [ADEA waiver] requirements does not constitute
a separate cause of action and is not a violation of the ADEA");
Marks v. New York Univ., 61 F. Supp. 2d 81, 90 n. 7 (S.D.N.Y. 1999)
(concluding that § 626(f) does nothing more "than prescribe the
requirements for an effective waiver of ADEA claims."); Management
Employees of AT & T v. AT & T, 1999 WL 334751 (D.N.J. 1999)
("[p]laintiffs have cited no support—and this Court has found none—
for the contention that [requiring employees to sign a deficient
release to participate in an early retirement program], if proven,

creates an independent cause of action."); <u>E.E.O.C. v. UBS Brinson, Inc.</u>, 2003 WL 133235, at *3-5 (S.D.N.Y. Jan. 15, 2003).

Given that Alicea has not provided any authority to support the existence of her "unlawful-interference with statutory rights" and "violation of EEO waiver requirements" claims under 29 U.S.C. § 626 and/or 42 U.S.C. § 1983, Defendant's *Motion for Summary Judgment* is granted as to said causes of action (Counts III and V of the *Second Amended Complaint* at Docket No. 21).

### D.   **Witness Tampering**

Lastly, Plaintiff claims that Defendant may be subject to prosecution for "interference with an administrative investigation under the omnibus clause of 18 U.S.C. § 1505" and/or "tampering with and retaliating against a witness in connection with an administrative proceeding" under 18 U.S.C. § 1513. (Docket No. 21 ¶ 39).

18 U.S.C. § 1505 establishes a term of imprisonment for any person who "corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States." This is a criminal statute that does **not** create a civil cause of action. Furthermore, merely *offering* a LCA, regardless of any deficiencies it may have, cannot be constituted as an attempt to

corruptly influence or obstruct an EEO proceeding. More so when Plaintiff did not sign the LCA and it was never enforced. (Fact ¶ 38).

Likewise, 18 U.S.C. § 1513 specifies the criminal sanctions that apply to "whoever kills or attempts to kill another person with intent to retaliate against any person for" attending or assisting with official proceedings. This is also **not** a civil cause of action and is plainly inapplicable to the case at hand.

Because Plaintiff's witness tampering claim lacks an arguable basis either in law or in fact, Defendant's *Motion for Summary Judgment* is granted as to this cause action (Count IV of the *Second Amended Complaint* at Docket No. 21).

### V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's *Motion for Summary Judgment* at Docket No. 50. Consequently, **all** of Plaintiff's claims are **DISMISSED WITH PREJUDICE.** Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March 2020.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge